LOLLEY, J.
|, Charlene Tedford appeals a judgment in favor of Marcia Lynn Middleton by the Fourth Judicial District Court, Ouachita Parish, Louisiana. The trial court’s judgment was also against Charlene Tedford’s codefendant, Bobby Kent Tedford, but he is not an appellant. For the following reasons, we affirm the trial court’s judgment.
Facts
Marcia Middleton and Bobby Kent Ted-ford were married in 1993. Charlene Ted-ford is Bobby’s 84-year-old mother and the owner of seven acres of immovable property in Ouachita Parish, Louisiana (the “property”). At the onset of their marriage, Marcia and Bobby lived in a mobile home on the property. In 1998, Marcia and Bobby, using community funds, commenced construction of a home on Charlene’s property (the “house”) with her permission. They moved into the house in late 1998 to early 2000. There is no dispute that Charlene owns the land on which the matrimonial domicile is located.
*999 The couple’s marriage ended in divorce by judgment dated November 30, 2012. During the course of the community property settlement, Bobby claimed in his hearing officer conference affidavit, dated August 11, 2011, to own the house (“Structure only”). However, he claimed the house had “$-0-” value.
In a letter dated February 15, 2018, Charlene informed Marcia and Bobby that she was withdrawing permission for them to have the house on her property. In that letter Charlene informed Marcia and Bobby that:
I gave you two my permission to construct your family home and other improvements on my land.... I did not want there to |2be any possibility that someone other than the Tedford family would own the land. Now that the two of you are divorced and in the process of dividing up your community property, I am withdrawing my permission for your house and other improvements to be on my land.
This letter serves as formal, written demand for removal of your house and all of your other improvements situated on my land. Within ninety (90) days of the February 15, 2013 date of the mailing of this letter you must remove your house and all other improvements and restore my property to its former, pre-construction condition. By my count, this 90-day period of time expires on Thursday, May 16, 2013.
By a letter dated June 14, 2013, Charlene informed Marcia and Bobby of the following:
More than ninety (90) days have elapsed since the February 15, 2013 letter was mailed. As of June 14, 2013, you have not removed your house and all other improvements from my land, and you have not restored my property to its former, pre-construction condition. This letter serves as formal, written notice to the both of you that I am appropriating, and have now appropriated, full and complete ownership of your house and other improvements situated on my land.
The house was not removed from the property; Bobby claims it cannot be removed due to the ongoing community property settlement between he and Marcia. Charlene claims to be the owner of the house, reasoning, “If it’s on my property, I own it.” Notably, Bobby continues to live in the house with his and Marcia’s minor son and their adult daughter.
Presumably, the matter that precipitated this lawsuit is the judicial partition of the community property belonging to Marcia and Bobby. At the time this matter was tried, the issue of the couple’s community property was being considered in the proceeding Bobby Kent Tedford v. Marcia Lynn Middleton Tedford, Proceedings no. 11-2164, Fourth Judicial District, Ouachita Parish, Louisiana. As previously stated herein, in Bobby’s August |¾2011 hearing officer conference affidavit, he admitted to owning the house (“Structure only”), but averred that it had no value.
In April 2013, Marcia filed this lawsuit outside the community property proceeding against Charlene and Bobby, alleging Marcia understood that she and Bobby had permission to build and one day the property would belong to Bobby. Marcia sought reimbursement from Charlene and Bobby for the current value of the materials as well as the enhanced value of the property. Charlene answered the petition, as well as filed a reconventional demand for a judgment declaring her owner of the house. Charlene also filed a cross-claim against Bobby requesting the same relief.
After a trial of the matter, judgment was entered in favor of Marcia, and the trial court ordered that:
*1000 Marcia Middleton’s one-half (½) interest in the improvements situated at 929 Harrell Road in West Monroe be MAINTAINED for purposes of the ongoing community property partition in Bobby Tedford, vs. Marcia Lynn MidL dleton Tedford, no. 11-2164, and that the value of same be determined within those proceedings. (Emphasis original).
By recognizing Marcia’s one-half interest in the house and implicitly the ownership interest of she and Bobby, the trial court effectively rejected Charlene’s claim for ownership of the house. Charlene appeals that judgment, but Bobby does not.
Discussion
On appeal, Charlene raises four assignments of error, only one of which directly addresses the judgment of the trial court. Primarily, |4Charlene argues that the trial court erred in failing to properly apply La. C.C. art. 493. That article is premised upon the existence of a building constructed on the land of another and provides for the termination of the two owners’ relationship as follows:
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within ninety days after written demand, the owner of the land may, after the ninetieth day from the date of mailing the written demand, appropriate ownership of the improvements by providing an additional written notice by certified mail, and upon receipt of the certified mail by the owner of the improvements, the owner of the land obtains ownership of the improvements and owes nothing to the owner of the improvements. Until such time as the owner of the land appropriates the improvements, the improvements shall remain the property of he who made them and he shall be solely responsible for any harm caused by the improvements.
According to Charlene, had the trial court properly followed La. C.C. art. 493 regarding this accession principle, it would have recognized that Charlene was indeed the owner of the house. Charlene specifically argues that she followed the procedure under Article 493 for acquiring ownership of the house, and the trial court simply erred in failing to apply the law. Charlene admits that Marcia and Bobby had permission to build their house on her property. However, according to Charlene, because Marcia and Bobby had divorced, she informed them that she had withdrawn her permission for the house to remain on her property. Charlene contends that when the house was not removed, ownership of it became hers pursuant to La. C.C. art. 493. We agree that a determination of ownership of the house is critical in order to determine whether Marcia has any interest in it.
| ¡¡Initially, we note that “buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground.” La. C.C. art. 464. The question whether buildings and standing timber belong to the owner of the ground or to another person is determined under the rules governing acquisition of ownership. La. C.C. art. 464, Revision Comment (e). Thus, did Marcia and Bobby acquire ownership of the house as a separate immovable from Marcia’s ownership of the land?
As noted by Professor Yiannopoulos, Civil Law Property § 116, p. 269 (2001), “The Civil Code contains provisions indicating the circumstances in which buildings, other constructions, and plantings belong to the landowner or to the persons *1001 who made them. In this respect, the consent of the landowner is determinative(Emphasis added). Ownership of the house making it a separate immovable is contingent on Charlene’s initial consent.
The parties’ initial agreement was not made in writing, but as an oral agreement. Nevertheless, an oral transfer of an immovable is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated under oath. La. C.C. art. 1889. The evidence regarding Charlene’s consent is the testimony of the parties: Marcia, Bobby, and Charlene, which made clear certain facts:
• Marcia and Bobby lived on Charlene’s property prior to building their house;
• Charlene gave permission for Marcia and Bobby to build their “family home” on her property;
• Community funds were used in the construction of the house;
|b* Marcia assumed she and Bobby owned the house;
• Bobby built the house intending on living in it his entire life, and in leaving it to his children;
• Bobby pays property taxes on the house;
• Charlene intended for the property to remain in the Tedford family;
• Charlene revoked her consent because Marcia and Bobby were getting divorced; and,
• Despite Charlene’s attempt to revoke her permission, Bobby still lives in the house with the couple’s children.
The fact that Charlene consented to Marcia and Bobby’s construction of the house is not at issue; thus, the separate ownership of the two immovables is established pursuant to La. C.C. art. 464. Nonetheless, it is incumbent to determine the nature of that consent in order to establish whether Charlene’s revocation was reasonable and, therefore, valid. Considering that separate ownership of the two immovables was established, how long did the parties agree that Marcia and Bobby’s ownership of the house would last? Or, how long was Charlene bound by her agreement consenting to the construction of the house?
One important consideration regarding Charlene’s consent is the parties’ expectancy for use of the immovable constructed on the landowner’s property. Notably, Article 493 addresses not only buildings, but plantings as well. In the event that a party were to place plantings on the property of another party with consent, it is reasonable to conclude that the consent would have a term at least the length of time necessary for the plantings to be fully cultivated. This has been recognized in the | jurisprudence regarding growing timber owned separate from the land. See e.g., Chicago Mill & Lumber Co. v. Lewis, 68 So.2d 913 (La.App. 2nd Cir.1953). Here, the separate immovable is a house, a building that has at its essence a quality of a degree of permanency. At the time Charlene attempted to revoke her consent, the house had been on her property for approximately 15 years-not that long for the lifespan of a permanent dwelling such as a house. It is reasonable to assume that Charlene’s consent to allow construction and separate ownership of the house would have a reasonable term in keeping with the nature of that building-certainly longer than 15 years.
Second, the nature of her consent is affected when considered in terms of the cause for giving her consent to construct the house. Cause is the reason why a party obligates himself. La. C.C. art. 1967. It is abundantly clear from the testimony that Charlene’s consent was tied to her desire that the house would be for her *1002 family’s use; and, as long as that house was used by the family, it is reasonable to assume that her consent would prevail. Notably, Charlene admitted that she sought to revoke her consent because Marcia and Bobby were getting a divorce. However, her consent for the use of the house was continuing as long as the house was used by her family. The house is still being used by her family' — -Bobby lives in the house with his children (Charlene’s grandchildren). Considering the nature of the thing for which she gave her consent (i.e., a house), and the cause for her consent, we conclude that her attempted 2013 revocation was premature, thus making her revocation invalid.
| sConcluding that Charlene’s revocation was invalid, it stands that Marcia and Bobby still enjoy separate ownership of the house on Charlene’s property. Without evidence otherwise, the house is presumed to be community property, and its value is to be determined in the community property partition proceedings as ordered by the trial court.
Conclusion
For the reasons stated herein, the judgment of the trial court in favor of Marcia Lynn Middleton and against Charlene Tedford and Bobby Tedford is affirmed. All costs of this proceeding are assessed to the appellant, Charlene Tedford.
AFFIRMED.